IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID EARL PIERCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11-00080-N |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiff, David Earl Pierce, filed this action seeking judicial review of a final

decision of the Commissioner of Social Security ("Commissioner") that he was not

entitled to either disability insurance benefits ("DIB") under Title II of the Social

Security Act (the Act) or Supplemental Security Income ("SSI") under Title XVI of the

Act. This action has been referred to the undersigned Magistrate Judge to conduct all

proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and

Fed. R.Civ.P. 73 (doc. 22) and pursuant to the consent of the parties (doc. 21). Further,

plaintiff's unopposed motion to waive oral arguments (doc. 20) was granted on April 16,

2012 (doc. 23). Upon consideration of the administrative record (doc. 14) and the

parties' respective briefs (docs. 16 and 18), the undersigned concludes that the decision

of the Commissioner is due to be **AFFIRMED**.

I. Procedural History.

Plaintiff Pierce filed an application for disability insurance benefits and

supplemental security income on October 16, 2008, claiming an onset of disability as of

December 31, 2006.  (Tr. 129-135).  Pierce alleged that his disability was due to a stomach hernia and back and knee problems.  The date last insured (DLI) by Social Security  for Title II benefits for Pierce is December 31, 2008 (Tr. 33).   Pierce's applications were initially denied on February 9, 2009.  (Tr. 72-73).  Pierce timely requested a hearing before an Administrative Law Judge  ("ALJ")(Tr. 89-90), which was held on April 9, 2010 (Tr. 26-71).   The ALJ issued an unfavorable decision on June 14, 2010.  (Tr. 9-25).  Pierce  requested a review by the Appeals Council which was denied on December 22, 2010 (Tr. 1-5), thereby making the ALJ's decision the final decision of the Commissioner.    See 20 C.F.R. §  404.981 (2009).[1]   Pierce has exhausted all his administrative remedies and now appeals from that final decision.

 II. <u>Issues on Appeal</u>.

 1. Whether the ALJ improperly rejected Pierce's testimony regarding the intensity, persistence and limiting effects of his pain.

 2. Whether the ALJ properly considered Pierce's combined impairments in determining Pierce's residual functional capacity.

 3. Whether the ALJ's misstated and/or misapplied the opinion of consultative examiner Sirisha Parvataneni, M.D.

 4. Whether the ALJ failed to fulfill his duty to develop the record by ordering a consultative examination for the purpose of establishing an appropriate RFC.

 III. <u>Standard of Review</u>.

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to the 2011 edition.  Subsequent citations are to part 404, which addresses DIB, and have parallel citations in part 416, which addresses SSI.

A.    <u>Scope of Judicial Review</u>.

In reviewing claims brought under the Social Security Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996); <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997); <u>Chater</u>, 84 F.3d at 1400; <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991). *See also*, <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]").

In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. <u>Lynch v. Astrue</u>, 358 Fed.Appx. 83, 86 (11th Cir. 2009); <u>Martino v. Barnhart</u>, 2002 WL 32881075, * 1 (11th Cir. 2002); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary

of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

          B.     Statutory and Regulatory Framework.

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.  Eligibility for SSI is based upon proof of indigence and disability. See 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  Patterson v. Bowen, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. See 42 U.S.C. §§  423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental

4

impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010).  The Eleventh Circuit has described the evaluation to include the following sequence of determinations:

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  *See also* Bell v. Astrue, 2012 WL 2031976, *2 (N.D. Ala., May 31, 2012); Huntley v. Astrue, 2012 WL 135591, *1 (M.D. Ala. Jan. 17, 2012).

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237–39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At

Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids"),or hear testimony from a vocational expert (VE). Id. at 1239–40.

IV.   Findings of Fact and Conclusions of Law.

A.   Statement of Facts.

1.   Pierce's Vocational Background.

Pierce  acknowledges that he was 42 years old at the time of his administrative hearing. (Tr. 33, 129). [2]  Pierce completed the tenth grade of school. (Tr. 33, 157).    His most recent job was "lawn service work" of "three, four hours a day"  for a "guy [who] was paying me under the table" (Tr. 37-38) at "$9.00 an hour" (Tr. 41)  during "the last part of 2007 and right at the first part of 2008 . . . [for] maybe six to eight months"  (Tr. 42).  Other jobs held by Pierce  included industrial painting (Tr. 34, 163),  putting in

_____

[2] Pierce was 41 on his December 31, 2008 date last insured, a date on or before which the claimant must be found to have been disabled in order to qualify for DIB.  *See* 20 C.F.R. § 404.101; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

fencing (Tr. 35, 36, 166),  building demolition work (Tr. 35-36), and electrical helper (Tr. 38).

2.  <u>Medical and Documentary Evidence</u>.

Pierce had surgery on his right knee and surgery on his left ankle "in the 80s" the records for which he has been unable to obtain because the doctor has retired (Tr. 30, 31, 179).[3]  Pierce also had abdominal surgery in approximately 2002 (Tr. 196).

On December 26, 2007, Pierce presented to the Vaughan Regional Medical Center (Vaughan RMC) emergency room with a complaint of generalized abdominal pain and "bloated feeling"  (Tr. 196).  He was assessed as having a "knot" next to his surgery site from the abdominal surgery performed "5 years ago" (Tr. 196).  On examination, he was alert, oriented, and in no acute distress, with some tenderness in his abdomen but normal bowel sounds and no abnormal enlargement of organs (organomegaly), pulsatile mass, or abdominal bruit. He is reported to have been able to walk to his room and did not require "self care" assistance.  (Tr. 197).  Inspection of his back and legs was normal (Tr. 199).  Emergency room staff assessed him with an umbilical hernia and released him that same day in stable condition, with instructions to follow up with his primary care physician (Tr. 198-99, 201).

On December 8 2008, Pierce completed a Function Report asserting that he took care of and cooked for his 91-year-old aunt; handled his own personal care without any problems; did laundry (twice a week); mowed the lawn (once a week); shopped for food

---

[3] Pierce later contended that he had arthroscopic surgery on his knee in "about '95."  (Tr. 43-44).

(once a week); and went to his friends' houses to visit (once or twice a week) (Tr. 171-78). He estimated that he could lift 30 pounds and walk two blocks without stopping (Tr. 176). Pierce said that he could pay attention for one hour at a time, and had a "pretty good" ability to follow written and spoken instructions (Tr. 176-77).

On January 30, 2009, Pierce presented to Sirisha Parvataneni, M.D., for a disability evaluation (Tr. 207) He reported that he injured his ankle in a fall in approximately 1988, after which he had ankle surgery  (*Id*.).  Pierce also claimed to have broken his back in a 1994 car accident, "but no surgery was done" (*Id*.).  He stated that he could not stand for more than 10 to 15 minutes because of back pain but did not take pain medication because "he doesn't have any money"  (*Id*.).   Pierce also reported mild abdominal pain "brought on by eating spicy foods"  (*Id*.).   On examination, Dr. Parvataneni observed that Pierce's abdomen had a linear scar, but no palpable masses or tenderness (Tr. 208).  He had minimal swelling in his ankle but normal range of motion. (*Id*.).  Pierce was assessed to be well-developed, with full range of motion in his back and knees; a smooth, coordinated gait; normal muscle tone and muscle strength; and no muscle atrophy (Tr. 208-209).  Dr. Parvataneni's assessment included gastritis and arthritis in the right ankle (Tr. 210).

On December 7,  2009, Pierce returned to the Vaughan RMC emergency room and reported "mild" pain after his left knee "gave way last night while bending over" (Tr. 230).  On examination, he was alert and in no acute distress, with tenderness in his knee but otherwise normal inspection of his ankles and legs (Tr. 231).   An x-ray of his left knee showed an area of calcification associated with mild adjacent soft tissue swelling, which did not have the typical appearance of an acute injury but might represent

8

inflammation due to overuse (Tr. 236).   Emergency room staff prescribed narcotic pain medication (Lortab) and non-steroidal anti-inflammatory medication (Toradol) and instructed him to follow up with his primary care physician (Tr. 233, 235).

On March 27, 2010, Pierce returned to the Vaughan RMC emergency room and reported that he had fallen two days earlier, injuring his right hand (Tr. 221).  An x-ray of his hand showed a fracture of the fourth metacarpal bone in his ring finger (Tr. 227). On examination, he was alert, oriented, and in no acute distress, with full 5/5 muscle strength in his arms and legs (Tr. 224-225).  He walked independently and was independent in his activities of daily living (*Id.*).  Pierce was released that same day (Tr. 221-27). Three days later, on March 30, 2010, he returned to the hospital and reported right hand pain; he was treated and released that same day with instructions to see an orthopedist "ASAP" (Tr. 218).

### 3.   Pierce's Testimony.

Pierce was represented by counsel during the administrative hearing (Tr. 26). He testified that he was unable to work due to leg and back impairments (Tr. 43). According to Pierce, he first began experiencing problems with his legs in approximately 1995, after undergoing knee surgery (Tr. 43-44).   Pierce testified that he experienced swelling in his ankle and knee two or three times a week (Tr. 45).  He said that his right hip and left knee would go "out" on him, causing him to fall (Tr. 44-45). Pierce claimed that, in the three months prior to the hearing, he had fallen two to three times a week (Tr. 53-54).  He said he used a cane (which he borrowed from his aunt), but acknowledged that he had not brought the cane to the hearing (Tr. 53, 62). Pierce testified that he had experienced back problems since the 1990's, but acknowledged that he had never had surgery on his back

9

(Tr. 46-47). He said that he had a hernia in his stomach following a failed operation, but acknowledged that he had been released to work after the operation (Tr. 48).

Pierce's driver's license was suspended following a 2002 car accident (Tr. 62-64). During a typical day, Pierce testified that he lay on the couch (with his legs elevated) and watched television (Tr. 50). Although he previously acknowledged cooking for his elderly aunt and doing housework, he denied cooking or performing household chores, asserting that these activities were performed by his aunt and his sister (*Cf.* Tr. 172-73 and Tr. 51). Piece conceded, however, that he regularly mowed his lawn after the alleged onset of disability (Tr. 51, 64) and worked "under-the-table" for a lawn care service (Tr. 42-43, 60).

With regard to his functional abilities, Pierce testified at the hearing that he could sit at the most for about 35 to 40 minutes at a time, stand for 15 minutes at a time, and walk less than a block (Tr. 52-53). At the end of the hearing, the ALJ observed that Plaintiff had sat for approximately one hour without a break (Tr. 70; *see also* Tr. 28, 71).

4.   Vocational Expert Testimony.

Vocational expert Marcia Schulman testified in response to a series of hypothetical questions[4], one of which concerned an individual of Pierce's age, education,

---

[4] The ALJ's first hypothetical limited the hypothetical individual of Claimant's age, education, and work experience to "medium exertional limits with occasional climbing of ramps and stairs; never climbing of ropes, ladders, or scaffolds; occasional balance, stoop, kneel, crouch, and crawl; environmental limitations of avoiding concentrated exposure to extreme cold, . . . wetness, . . . humidity. (Tr. 66). The ALJ's second hypothetical took the same hypothetical individual but "reduce[d] him to light exertional limits, and add[ed] to it foot control operation limitation to frequent, right foot control operation; same postural limitation; same environmental limitations." (Tr. 66). The ALJ's third hypothetical reduced the same individual "to sedentary and allowing the individual a sit/stand option at one hour intervals, basically allows the person to (Continued)

and work experience who could perform sedentary work with the option to alternate

sitting and standing at one hour intervals, and who could frequently operate foot controls

with his right foot; occasionally balance, stoop, kneel, crouch, and crawl; occasionally

climb ramps and stairs but never climb ropes, ladders, or scaffolds; and who should avoid

concentrated exposure to wetness, humidity, or extreme cold (Tr. 66-67). The expert

testified that the individual could perform the jobs of assembler (Dictionary of

Occupational Titles (DOT)[5] 732.684-062, 3,300 jobs in Alabama and 280,000 nationally)

and painting and coating worker (DOT 729.684-018, 670 jobs in Alabama and 31,000

nationally) (Tr. 68). The expert said her testimony about the availability of a sit/stand

option was based on her professional experience (Tr. 69).

Pierce's counsel proposed a hypothetical to the expert which adopted the ALJ's

first hypothetical but added a limitation that, "due to exacerbation of pain and swelling in

the . . . claimant's ankles and knees, and all his impairments, that he would be absent

from work one to two days a week." (Tr. 69).  When Pierce's counsel then asked the

expert whether "that individual [would] be able to perform the Claimant''s past work or

any other work in the regional or national economy," the expert testified that "they might

be able to, but they probably wouldn't be allowed to [work] on a full-time basis . . . at

that frequency of absence."  (Tr. 69).

_____

go from sitting to standing position remaining at the workstation to stretch or whatever for a brief
period of time. . . five minutes, approximately." (Tr. 67).

    [5] U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed., rev. 1991).

5.      The ALJ's Decision.

The ALJ followed the five-step sequential evaluation process for evaluating

disability claims. *See* 20 C.F.R. § 404.1520(a)(4). At the first three steps, the ALJ found

that Pierce had not engaged in substantial gainful activity since the alleged onset of

disability; that gastritis, hernia, osteoarthritis of the right ankle, and chronic pain of the

knees and right hip were severe impairments; but that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the

impairments listed at 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 14, Findings 2-3; Tr. 17,

Finding 4). The ALJ then found that Pierce had retained the residual functional capacity

to perform the following:

> Sedentary work except that on a function by function basis the claimant can
> lift ten pounds occasionally; stand and walk no more than two hours in an
> eight hour workday; sit for no more than six hours in an eight hour
> workday; would have a sit/stand option allowing the claimant to alternate
> from sitting to standing while remaining at the work station at one hour
> intervals throughout the workday; could frequently operate foot controls
> with his right foot; should only occasionally climb ramps and stairs;
> precluded from climbing ladders, ropes, scaffolds; should only occasionally
> stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to
> extreme cold, wetness, humidity, and excessive vibrations.

(Tr. 17).   Finally, the ALJ concluded Pierce could perform the occupations of assembler

and painting and coating laborer, and was therefore not disabled under the Act (Tr. 20-

21).

IV.   Analysis.

1.      The ALJ properly rejected Pierce's testimony.

Pierce first argues that "the ALJ improperly rejected Mr. Pierce's  testimony

regarding the intensity, persistence, and limiting effects of his pain."  (Doc. 16 at 7).

12

Pierce argues that, "[a]lthough the ALJ does articulate some reasons for discrediting Mr. Pierce's testimony, regarding his pain, some of these reasons run contrary to the evidence and are not sufficiently specific." (*Id*. at 9). The Court disagrees.

The Eleventh Circuit has long recognized that "pain alone can be disabling even if there is no objective medical evidence to support the claimant's testimony about pain." Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984), *citing* Gaultney v. Weinberger, 505 F.2d 943, 945 (5th Cir. 1974). The Social Security Act, however, expressly provides that:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A); 20 C.F.R § 404.1529 ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Even where the record contains objective evidence suggesting a claimant could have pain or other symptoms, an ALJ may discount a claimant's subjective statements by making specific credibility findings. *See* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *4 ("If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must

consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms [and] must then make a finding on the credibility of the individual's statements about symptoms and their functional effects."); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Thus, the ALJ was not required to accept Pierce's statements regarding his limitations. *See* 20 C.F.R. § 404.1529 (factors to consider in evaluating credibility); Holt, 921 F.2d at 1223 (recognizing an ALJ has discretion to find a claimant's subjective statements are not credible).

It is the ALJ who "determines the disabling nature of pain." Cline v. Astrue, 319 Fed.Appx. 772, 774 (11th Cir. Mar. 13, 2009), *quoting* Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984). The ALJ may reject a claimant's complaints of pain as not credible and such will be sustained on appeal "[i]f substantial evidence supports the determination." *Id.* If the ALJ rejects a claimant's testimony concerning pain and such testimony is critical, the ALJ "must articulate specific reasons for questioning a claimant's credibility." Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987). *See also* Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(If the factfinder chooses to discredit a claimant's testimony regarding pain, "it is required to articulate 'explicit and adequate' reasons for doing so."); Paschal v. Astrue, 2011 WL 2261986, *4 (M.D. Ala. June 8, 2011)("[I]f the ALJ determines to discredit subjective pain testimony and such testimony is crucial to the claimant's assertion of disability, the ALJ 'must articulate specific reasons for questioning the claimant's credibility'.")

The ALJ in this case properly applied the standard and reasonably discounted Pierce's subjective statements in light of evidence of Pierce's activities (Tr. 19). The ALJ

14

correctly observed that, even after the alleged onset of disability, Pierce not only mowed his own lawn on a regular basis but also performed three to four hours per day of under-the-table lawn service work for others (Tr. 14, 16-17,  37-38,  42-43, 60, 173).  Thus, the ALJ identified valid bases for discounting Pierce's subjective statements. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) (stating an ALJ must consider a claimant's activities), 404.1571 ("Even if the work you have done [during a period of claimed disability] was not substantial gainful activity, it may show that you are able to do more work than you actually did."); Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996)(affirming an ALJ's credibility finding where the ALJ correctly observed that the claimant worked after the alleged onset of disability).

The ALJ also noted several inconsistencies in the record. For instance, while Pierce denied performing activities such as cooking or doing household chores (asserting that these activities were performed by his sister and elderly aunt), he at other times acknowledged that he cooked, did housework, and took care of his aunt (Tr. 18-19; *cf.* Tr. 172-73 and Tr. 51).  This inconsistency provided another reasonable basis for discounting Pierce's subjective statements. *See* 20 C.F.R. § 404.1529(c)(4) (stating an ALJ must consider whether there are any inconsistencies in the evidence); Moore, 405 F.3d at 1212 (finding an ALJ reasonably discounted a claimant's subjective statements due to inconsistencies between her statements and the record).

In addition, the ALJ correctly observed that, while Pierce stated that he had used a cane and had  fallen two or three times per week in the months prior to the hearing,

Pierce did not bring the cane to the administrative hearing (Tr. 19; see Tr. 53-54, 62)[6]. The ALJ reasonably found that "[a] person truly in fear of falling as frequently as the claimant alleged" would have used the cane in traveling to and from the hearing (Tr. 19-20). Consequently,  it was reasonable for the ALJ to discount Pierce's subjective statements in light of this inconsistency.  *See* 20 C.F.R. § 404.1529(c)(4); Moore, 405 F.3d at 1212.

Pierce also testified that he was unable to sit for more than 40 minutes at a time, but  the ALJ noted that he sat for about an hour during the hearing, "without any difficulty" (Tr. 19;  70; *see also* Tr. 28, 71).  While not controlling,  this nonetheless constitutes a valid basis for discounting Pierce's testimony. *See* SSR 96-7p, 1996 WL 374186, at *5 ("In instances where the individual attends an administrative hearing conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."); Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987) (finding an ALJ reasonably considered all of the evidence, including the claimant's demeanor at the administrative hearing, in evaluating credibility).

The ALJ also considered the medical record, which showed that Pierce had full range of motion in his back and knees; a smooth, coordinated gait; normal muscle strength and tone; and no muscle atrophy (Tr. 18;  208-10, 224). This evidence  did not

---

[6] Pierce said that he did not bring it to the hearing because his sister drove him and "pulled right up there to the door [and] I just come right out the door and just got in the truck." (Tr. 62).  Pierce does not describe how he got from the truck into the hearing once his sister arrived at the hearing's location.

support Pierce's assertions regarding extreme limitations in functioning (Tr. 18). *See* 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical evidence"); Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002) ("the medical and other evidence simply was not consistent with Wilson's alleged disabling pain").

Finally, the ALJ also observed that Pierce "has not been referred to or been treated by a pain specialist . . . [and] does not even take over-the-counter medication to relieve his pain." (Tr. 18). Pierce argues that "[n]owhere in his opinion did the ALJ cite to any specific medical record, document, or testimony which would indicate that Mr. Pierce's pain would be alleviated or controlled by pain management or medications." Doc. 16 at 10. Any error on this point, however, would be harmless because the ALJ's credibility finding is otherwise supported by substantial evidence. The ALJ identified sufficient other valid reasons for discounting Pierce's subjective statements. *See* Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (finding an error harmless where the ALJ would have reached the same decision despite the error); *see also* Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding harmless error where the ALJ gave some erroneous reasons but other legally valid ones). The ALJ's decision is due to be affirmed on this assignment of error because the ALJ has identified valid reasons for discounting Pierce's subjective statements which are supported by substantial evidence. *See* Bloodsworth, 703 F.2d at 1242 ("credibility determinations are for the [Commissioner], not the courts"). *See also* Carter v. Commissioner of Social Sec., 411 Fed.Appx. 295, 297 (11th Cir., Feb. 1, 2011)(We have affirmed an ALJ's decision that a claimant's testimony as to the alleged levels of pain and symptoms he experienced was

17

not credible where the allegations were inconsistent with activities of daily living, limited

use of pain medication, and effectiveness of treatment.), *citing* Wilson v. Barnhart, 284

F.3d 1219, 1226 (11th Cir. 2002).

> 2.   The ALJ properly considered Pierce's combined impairments in
> determining Pierce's residual functional capacity.

Pierce next contends that the ALJ failed to consider the entire record in evaluating

his residual functional capacity.  Doc. 16 at 12-14, *citing* Walker, *supra,* 826 F.2d at 1001

("[I]t is the duty of the ... [ALJ] to make specific and well-articulated findings as to the

effect of the combination of impairments and to decide whether the combined

impairments cause the claimant to be disabled.")(internal citation omitted) .   Pierce's

contention is, however, without merit.

The ALJ based his evaluation on "the entire record" and "all symptoms" (Tr. 17,

Finding 5; Tr. 18). *See* Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2008) (noting a

general practice of taking a lower tribunal at its word when it declares that it has

considered a matter); Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) ("The ALJ's

opinion is important not in its own right but because it tells us whether the ALJ has

considered all the evidence, as the statute requires him to do."). Indeed, the ALJ's

residual functional capacity assessment explicitly mentions Pierce's hernia (Tr. 18, 19),

gastritis (Tr. 18), and lower extremity symptoms (Tr. 18, 19). The ALJ also discussed

Pierce's reported back symptoms in his decision (Tr. 16).  *See*  Hurley v. Commissioner

of Social Sec., 147 Fed.Appx. 103, 107 (11th Cir. 2005)(ALJ found to have properly

evaluated all plaintiff's impairments.); Pouncy v. Astrue , 2011 WL 4435281, *8 (N.D.

Ala. Aug. 24, 2011)( "A statement by the ALJ that 'based upon a thorough consideration

of all evidence, the ALJ concludes that [claimant] is not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months[,]' will suffice to demonstrate that the ALJ 'has considered the combination issue'."), *quoting* Wheeler v. Heckler, 784 F.2d 1073, 1077 (11th Cir. 1986).  *Cf.* Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision").  The ALJ also considered the total limiting effects of Pierce's impairments on his functional abilities, as evidenced by medical examination findings and Pierce's activities after the alleged onset of disability (*see, e.g.*, Tr. 18-19). *See* 20 C.F.R. § 404.1545(e) (stating that the agency will consider the total limiting effects of a claimant's impairments in assessing residual functional capacity).  Consequently, the ALJ committed no error with respect to his consideration of Pierce's impairments in combination.  *See* Gibbs v. Barnhart, 156 Fed. Appx 243, 247 (11th Cir. 2005)(Held that "a careful review of the record shows that, in making [h]is final determination . . . the ALJ properly considered Gibb's physical and mental impairments in combination").

### 3.    The ALJ properly stated and applied Dr. Parvataneni's opinion.

Pierce argues, in sum, that it was improper for the ALJ to give greater weight to Dr. Sirisha Parvataneni's opinion "than the treating source."  Doc. 16 at 14.  Pierce relies solely on the following Social Security Ruling:

> The opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion **if** the State agency medical or psychological consultant's opinion is **based on a review of a complete case record that includes a medical report from a specialist in the**

> **individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.**

SSR 96-6p (emphasis added by Pierce).  Pierce argues that "this matter contains no such report from a specialist."  Doc. 16 at 14.  Pierce also argues that Dr. Parvataneni's opinion could not have been based on a "review of the evidence of record" as stated by the ALJ (Tr. 19) because the record did not, at the time of the consultant's examination, contain "the medical evidence of record dated December of 2009 to March of 2010."  *Id.* at 14-15.

Pierce, however, has failed to identify any "treating source" which is inconsistent with Dr. Parvataneni's  opinion.  During a consultative examination, Dr. Parvataneni observed that Pierce was well-developed, with no palpable tenderness or masses in his abdomen; full range of motion in his back, knees, and ankles; a smooth, coordinated gait; normal muscle tone and muscle strength; and no muscle atrophy (Tr. 208-10).  She assessed Pierce with gastritis and arthritis in his right ankle, but did not find any functional limitations (Tr. 210).  The record contains no opinion by any of Pierce's treating physicians that Pierce had functional limitations. Consequently, the ALJ did not err by affording Dr. Parvataneni's assessment controlling weight (Tr. 19).

4.     The ALJ fully and fairly developed the record.

Pierce's last assignment of error is that "the Commissioner's decision should be reversed based on his failure to fulfill his duty to develop the record by not ordering a consultative examination in this case for the purpose of establishing an appropriate RFC." Doc. 16 at 15.  Pierce also argues that the case should be remanded "for proper development and evaluation of his hip condition."  *Id.* at 17.

The record, however, does contain a consultative examination report, the evaluation conducted on January 30, 2009, by Dr. Parvataneni (Tr. 207-10), which the ALJ appropriately relied on in his decision (Tr. 15, 18). Moreover, the ALJ specifically considered medical examination findings in assessing Pierce's residual functional capacity (Tr. 18; *see also* Tr. 14-15 (discussing the medical record)).

With respect to Pierce's contention that the ALJ should have ordered an additional consultative examination to evaluate his hips (Doc. 16 at 17), the regulations governing consultative examinations provide that a consultative examination will be ordered only when the evidence as a whole—both medical and non-medical—is not sufficient to support a decision on the claim. *See* 20 C.F.R. § 404.1519a(1). It is within the ALJ's discretion to order additional medical examinations but only when the record is insufficient to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1517; *see also* Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988)(recognizing an ALJ has the discretion not to order a consultative examination if it is unnecessary to an informed decision); Hinman v. Astrue, 2012 WL 1020427, *12 (M.D. Fla. Mar. 27, 2012)(same); Blanks ex rel. Blanks v. Apfel, 2001 WL 228178, *6 (S.D. Ala. Feb. 23, 2001)(same). The record in the present case was sufficient to make a determination. In point of fact, the medical and non-medical evidence in this case supported the ALJ's finding that, while Pierce could no longer perform the full range of work, he retained the ability to perform a reduced range of sedentary work—the least strenuous type of work. 20 C.F.R. § 404.1567(a) (defining sedentary work). The ALJ's decision is, therefore, due to be affirmed. *See* Bloodsworth, 703 F.2d at 1239 ("We may not decide the facts

anew, reweigh the evidence, or substitute our judgment for that of the Secretary."). A reasonable person would accept the evidence in this record as adequate to support the ALJ's decision. *Id*.

     V.    <u>Conclusion</u>.

    For the reasons stated above, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff's benefits be and is hereby **AFFIRMED**.

    **Done** this  13th  day of August,  2012.

<u>/s/ Katherine P. Nelson</u>
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**
